**SIGNED.**



CLERK: This Memorandum Decision and Order are to be filed in the case of AVC Villa Del Lago at Ocotillo Devco, L.L.C., No. 08-6834

**Dated: January 06, 2010**

_____
**JAMES M. MARLAR**
**Chief Bankruptcy Judge**

_____

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

In re: Case No. <u>2:08-bk-06834</u>

AVC VILLA DEL LAGO AT OCOTILLO DEVCO, L.L.C., an Arizona limited liability company, fka AVC SWEETWATER VILLAGE, L.L.C., dba VILLA DEL LAGO,

                    Debtor.

In re: Case No. <u>2:08-bk-06836</u>

AVC ESTRELLA VILLAGE DEVCO, L.L.C., an Arizona limited liability company, dba THE VILLAS AT MOUNTAIN RANCH,

                    Debtor.

In re: Case No. <u>2:08-bk-06837</u>

THE VILLAS AT OCOTILLO, L.L.C., an Arizona limited liability company, fka FOX VILLAGE VILLAS AT OCOTILLO, L.L.C.,

                    Debtor.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Jointly Administered Chapter 11 Cases

**MEMORANDUM DECISION**

**(Re: Final Fee Application of Schian**

**Walker, Counsel for Debtor TVAO)**

       A hearing was held on October 14, 2009, (DN 217) on The Villas at Ocotillo's ("TVAO") Final Application for Allowance of Attorneys' Fees and Costs (DN 205).[1] Kitchell

---

[1]     Although the vast bulk of the proceedings occurred in Case 2-08-bk-6834, the court and parties nonetheless refer to the case as "TVAO," which is an acronym for the Debtor in Case 2-08-bk-6837.

Custom Builders ("KCB") filed its Supplemental Objection to that Final Application[2] (DN 211), and Debtor TVAO filed its Response (DN 216).

As part of post-hearing briefing, TVAO filed its Revised Final Application for Professional Fees and Expenses of Schian Walker Re: TVAO Bankruptcy Estate (DN 224); KCB filed its Objection (DN 225); and TVAO filed its Reply (DN 226).

Pending is a dispute as to whether the attorneys' fees and costs sought by Schian Walker are reasonable. The parties have fully briefed and argued the points, and the court has reviewed the relevant law, as well as the files in all of the related cases.

## JURISDICTION

This court has core jurisdiction over fee disputes, which are requested administrative expenses. 11 U.S.C. § 157(b)(2)(A) and (B).

## ISSUES

1.    What amount is reasonable for attorneys' fees and costs charged by Schian Walker, as court-appointed attorneys for TVAO and all three related Debtors?

2.    Does KCB have standing to oppose Schian Walker's fee request?

## PROCEDURE

The Debtors filed three related voluntary Chapter 11 bankruptcy petitions on June 10, 2008 (the "Petition Date").

On June 25, 2009, the court granted the Application by Debtor to Employ Schian Walker as Counsel for Debtor TVAO (DN 17, In re TVAO, Case 2-08-bk-06837-EWH ). Neither

---

[2]    This Objection supplemented KCB's  Objection To Notice Of Filing Administrative Expense Claim Of Schian Walker (DN 194).

2

the revised fee application (DN 224), nor the original first fee application (DN 120) showed or itemized any fee or time entries prior to the June 10, 2008 filing dates for these three Debtors. Yet, Debtors' counsel disclosed that it had accepted $91,000 as a pre-petition retainer for its bankruptcy-related services. (*See* Disclosure of Compensation, DN 14, para. 8.) Without seeking court approval, nor itemizing what it did, the firm unilaterally withdrew $20,518 in fees and $3,117 in costs (filing fees) from the $91,000, which it has never accounted for nor sought approval of.

On July 17, 2008, the court granted the motion for joint administration for these three bankruptcy cases, AVC Villa del Lago at Ocotillo DevCo, LLC, Case 2-08-bk-06834-JMM, AVC Estrella Village DevCo, LLC, Case 2-08-bk-06836-SSC, and TVAO, Case 2-08-bk-06837-EWH (DN 34). In essence, virtually all of the significant legal activity occurred in the TVAO case, Case. No. 08-6834.

A plan confirmation proceeding, on a creditor's plan proposed by KCB, was held on July 28, 2009 (DN 197), and an Order Confirming the TVAO Amended Plan of Liquidation Dated April 22, 2009 was docketed on August 12, 2009 (DN 201). An appeal of that order was taken by Arizona Village Operating Company, Inc. (DN 63, TVAO, Case 2-08-bk-06837-JMM). That appeal was recently dismissed, and the confirmation order is now final. (*See* DN 68, Case 2-08-bk-6837.)

The other two cases are moribund, and are approved for dismissal. Final dismissal orders are yet to be entered.

## A. Standing

KCB, as a creditor and the proponent of a successful plan, has standing to object. 11 U.S.C. § 1109(b). KCB waived a significant claim of over $600,000, and agreed to inject $110,00 in cash toward plan purposes, as part of its successful plan. It would be an unfair legal anomaly to now deny it standing to address post-confirmation issues because of its decision to waive its claim in exchange for approval of its creditor's plan. This result, in effect, would leave the reorganized Debtor without a voice, and at the mercy of the defeated Debtors.

3
Case 2:08-bk-06834-JMM    Doc 227    Filed 01/06/10    Entered 01/07/10 08:14:07    Desc
Main Document    Page 3 of 31

# B. Introduction--The Fee Dispute

Fee disputes are always difficult for a court. This is because, when called upon to do so, a court must make an effort to understand what was happening at every stage of the proceeding, and apply its experience and judgment to the time allocated for each particular task. When an objection to fees occurs, a court must review the entire case--or cases--from beginning to end. This is a long, slow and tedious process, subjective in nature, and fully fact-specific. The court has spent over 30 hours on this task in this case. This is because a court has an independent duty to review such fees, and usually its conclusions will be upheld unless a court's findings are either "clearly erroneous" or an abuse of discretion.

In cases where such disputes arise, it is always helpful if the opposing party can specifically identify which features of a fee application it feels are unreasonable. Here, KCB has taken the least effective road, and failed to identify a single time entry which it feels was neither reasonable nor earned. KCB, instead, broadly argues that the Debtor's law firm "disproportionately allocated" a majority of the fees to this partially solvent Debtor, and then concludes that the firm delivered "no benefit" to the estate after a certain date.

Thus, KCB argues, Debtor's counsel should be awarded absolutely nothing for fees.

As for the Debtor, it is disturbed that anyone would question its counsel, or its motives, and points to a "parade of horribles," including that KCB undertook to buy up claims and out-maneuver the Debtor in proposing--and confirming--a competing plan. Debtor's counsel maintains it should be awarded $159,383.78 in fees and costs.

Thus, the parties' positions are that the fees and costs are <u>either</u> zero or $159,383.78, which includes what the court previously awarded on an interim basis ($68,258.30).[3] The parties have taken an all-or-nothing approach to the problem, which they now ask this court to resolve.

---

[3] For reasons unknown to the court, the Order Granting First Application for Interim Allowance of Attorneys' Fees and Costs (DN 145) reflects that the balance of the pre-petition retainer held by Schian Walker is in the amount of $68,258.30, which amount does not match the $67,365 calculated in the first application or referred to in the final fee application.

4

1  The court must now undertake a dispassionate review of the events in the case(s), and

2  decide what fee, if any, is appropriate.

3  The court has already had to sort through these three cases once already, after the

4  Debtors' principals maintained that they were not bound by the plan.  The court must now again

5  tread that path with more care, in an effort to figure out what was happening, as the cases

6  progressed, that would or would not justify a legal fee to Debtor's counsel.

7

8  ### C.  Attorneys' Fees and Costs--Generally

9

10  What the parties must recognize at the outset is, that in determining what is a

11  reasonable fee to be paid to counsel, a court must attempt to place itself in the position of a

12  "reasonable" debtor and its attorneys.  Some hindsight is obviously helpful, but the most important

13  thing is to place oneself in the shoes of the attorneys at the time the work was being done, and assess

14  whether the work performed was necessary at the time, or if necessary, whether too much time was

15  expended for the required tasks.  In other words, "a bankruptcy court  must examine the

16  circumstances and  manner in which services are performed and  results achieved to determine a

17  reasonable fee."  *In re Garcia*, 335 B.R. 717, 724 (9th Cir. BAP 2005) (citing *In re Mednet*, 251

18  B.R. 103, 108 (9th Cir. BAP 2000)).

19  More than almost any other proceeding in bankruptcy, a decision on an attorneys' fee

20  request rests within the sound discretion of the trial judge and will not be disturbed unless it abuses

21  its discretion or it erroneously applies the law.  *See Garcia*, 335 B.R. at 723 (citing *In re Strand*, 375

22  F.3d 854, 857 (9th Cir. 2004)).  Courts, in looking at the reasonableness of an attorneys' fee claim

23  in a bankruptcy proceeding, have stated that it is "inherently unreasonable" to incur fees that are not

24  cost-justified either by the economics of the situation or as necessary to preserve the particular

25  party's interest in light of the legal issues involved.  *See, e.g., In re Wonder Corp. of America,* 72

26  B.R. 580, 588  (Bankr. D. Conn. 1987) (discussing reasonableness of § 506(b) fee request); *In re*

27  *Nicfur-Cruz Realty Corp.,* 50 B.R. 162, 169 (Bankr. S.D.N.Y. 1985) (same); *see also In re Crowley*,

28

5

293 B.R. 628, 632 (Bankr. D. Vt. 2003) (stating that § 330 reasonableness analysis applies to a secured creditor's § 506(b) attorney's fee request).

## D. The Standards

Section 330(a)(1)(A) provides that an attorney may be awarded "reasonable compensation for actual, necessary services" rendered by the attorney. Section 330 also states, in relevant part:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including -
>
> (A)  the time spent on such services;
>
> (B)  the rates charged for such services;
>
> (C)  whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D)  whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E)  with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F)  whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3). In examining the circumstances and manner in which services are performed and results achieved to determine a reasonable fee, the court considers:

> (a)  Were the services authorized?
>
> (b)  Were the services necessary or beneficial to the administration of the estate at the time they were rendered?

6

(c)     Are the services adequately documented?

(d)     Are the fees required reasonable, taking into consideration the factors set forth in section 330(a)(3)?

(e)     In making the determination, the court must consider whether the professional exercised reasonable billing judgment.

*Garcia*, 335 B.R. at 724 (citing *In re Mednet*, 251 B.R. at 108). In exercising reasonable billing judgment, the professional must consider:

(a)     Is the burden of the probable cost of legal services disproportionately large in relation to the size of the estate and maximum probable recovery?

(b)     To what extent will the estate suffer if the services are not rendered?

(c)     To what extent may the estate benefit if the services are rendered and what is the likelihood of the disputed issues being resolved successfully?

*Mednet*, 251 B.R. at 108 n. 7 (citing *Unsecured Creditors' Committee v. Puget Sound Plywood, Inc.*, 924 F.2d 955, 959 (9th Cir.1991)).

Section 330(a)(4) also provides a guide to that which is <u>not</u> compensable:

[T]he court shall not allow compensation for . . .

(i)     unnecessary duplication of services; or

(ii)     services that were not –

(I)     reasonably likely to benefit the debtor's estate; or

(II)     necessary to the administration of the case.

In *Garcia*, the Ninth Circuit BAP rejected a standard that services are only compensable if they result in a material benefit to the estate. It held that under § 330, a professional need only demonstrate that the services were "reasonably likely to benefit the estate" at the time rendered. *Garcia*, 335 B.R. at 724. Thus, benefit to the estate is not restricted to only a monetary benefit. *See In re Crown Oil, Inc.*, 257 B.R. 531, 540 (Bankr. D.Mont. 2000), quoting *In re Kohl*, 95 F.3d 713, 714 (8th Cir. 1996)).

"Another important consideration is whether the services rendered 'promoted the bankruptcy process or administration of the estate in accordance with the practice and procedures provided under the Bankruptcy Code and Rules for the orderly and prompt disposition of the bankruptcy cases and related adversary proceedings.'" *Crown Oil*, 257 B.R. at 540 (quoting *In re Spanjer Bros., Inc.*, 203 B.R. 85, 90 (Bankr. N.D.Ill. 1996)).

"Whether a reorganization is successful is a factor to be considered in determining whether a debtor's counsel's services provide a benefit to the estate." *Crown Oil,* 257 B.R. at 541 (citations omitted). "The Court does not expect the attorney to succeed in every endeavor he undertakes on behalf of the client. But the endeavor for which the estate is expected to pay must be reasonably calculated to produce a benefit to the estate." *Crown Oil*, 257 B.R. at 541, quoting *In re Hunt,* 124 B.R. 263, 267 (Bankr. S.D.Ohio 1990). "Chapter 11 cases which lack viable chances of reorganization may place the fees of counsel at risk." *Crown Oil*, 257 B.R. at 541 (quoting *In re Offield*, 128 B.R. 548, 550 (Bankr. W.D. Mo. 1991)).

In measuring reasonableness of fees, numerous judicial philosophies combine to assist a court. In addition to a judge's own experience, a court can draw upon the "lodestar" method (lawyer time multiplied by an hourly rate), application of factors, and a host of other judicial comments upon the subject. *See generally, In re Pettibone Corp.,* 74 B.R. 293 (Bankr. N.D. Ill. 1987).

A case which is generally cited for setting forth "twelve rubics" for a trial court to consider, in its determination of what constitutes a reasonable fee, is *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974). Those twelve factors, however, are not "self-actuating: simply to articulate those twelve factors ... does not itself conjure up a reasonable dollar figure in the mind of the district judge." *In re Jensen-Farley Pictures, Inc.,* 47 B.R. 557 (Bankr. Utah 1985) (quoting from *In re Casco Bay Lines,* 25 B.R. at 754). As Judge Allen noted in *Jensen-Farley*:

> In general, the statutory factors under Section 330 and the Johnson factors consist of three components: (1) the quantity factor, comprised of documented time at customary billing rates; (2) the quality factor, comprised of the competency of the representation, taking into account the novelty and difficulty of the issues presented, the skill required, the time constraints, and

the personal qualifications of the applicant; and (3) the result factor, comprised of the actual results achieved in the case.

Id. at 587.

In the case of *In re Casco Bay Lines, Inc.,* 25 B.R. 747 (Bankr. 1st Cir. 1982), the Bankruptcy Appellate Panel for the First Circuit stated that a court's initial approach, in determining a reasonable fee, is to multiply the number of hours reasonably expended on the case by a reasonable hourly rate. This is known as the "lodestar fee setting approach." However, as the *Casco Bay Lines* court stated, it is the quality of representation and the results that are most significant in determining the amount of the fee:

> It is under the heading "quality of representation" that a bankruptcy court should particularly consider the results of the attorney's participation in the bankruptcy proceeding, and the benefit to the estate to see if circumstances warranted adjustment of the lodestar figure. Where an attorney's services have produced particularly exceptional benefits for the estates, an upward adjustment of the lodestar may be warranted to compensate for an hourly rate that turned out to be overly conservative. Similarly, if a high-priced attorney performs at a competent but undistinguished manner, a decrease in the hourly rate would be warranted.

*Id.* at 756.

The trial court has discretion in awarding what it considers to be a reasonable fee. A court's discretion "means a sound discretion ... exercised not arbitrarily or willfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result." *In re AWECO, Inc.,* 725 F.2d 293, 298 (5th Cir. 1984) (review of bankruptcy approval of a compromise application).

The First Circuit said in *Boston and Maine Corp. v. Moore,* 776 F.2d 2, 9 (1st Cir. 1985):

> To determine the number of hours "reasonably" spent, as well as in setting a "reasonable" hourly rate, a court must review the work to see whether "counsel substantially exceeded the bounds of reasonable effort," ... and should disallow hours that were "duplicative, unproductive, excessive, or otherwise unnecessary.

With this backdrop, then, the difficult task begins.

9

1

## APPLICATION OF LAW TO THE FACTS

2

3        Considerations of fairness, results obtained, difficulties encountered, novelty of issues

4   presented, and the time and experience of those involved must all be weighed.  In order to do this

5   job properly, the cases must be scrutinized from top to bottom.

6        The TVAO and related cases were filed on June 10, 2008, and Debtor's counsel was

7   appointed on June 26, 2008 (DN 20).  In its Rule 2016 Statement, Debtor's counsel noted that it

8   received a retainer of $91,000, designed to assist all three related Debtors.  From that amount, three

9   filing fees of $1,039 each were paid, and $20,518 was deducted pre-filing.  This $20,518 figure has

10  never been itemized nor has approval been sought.  That left $67,365 in the firm's trust account on

11  June 10, 2008.  According to the 2016 statement, that sum was to "be used for post-petition fees and

12  costs of the three cases . . . ." (DN 14).[4]  The accounting is:

13

14              Retainer          $91,000

15          Less:  3 filing fees      (3,117)

16      Less:  Pre-filing deduction   (20,518)

17              Balance           $67,365

18                      ## THE RELATED CASES

19

20        Early in the case, the court ordered the joint administration of the three related cases.

21  A review of their separate dockets reflects that, aside from filing schedules therein, and scattered

22  monthly operating reports, nothing of much substance occurred in the other two cases.[5]

23

24        [4]    The other two cases are AVC Villa del Lago at Ocotillo DevCo, LLC, Case

25  2-08-bk-06834, and AVC Estrella Village DevCo, LLC, Case 2-08-bk-06836.

26        [5]    In one of the cases, TVAO, Case 2-08-bk-06837, there was post-confirmation
    activity, including an appeal.  That activity should have been properly filed in Case 2-08-bk-

27  6834.  In any event, it involved the principals' arguments that they were not bound by the plan.
    The Debtors' counsel did not participate in that phase of the case. (*See* Case 2-08-bk-6837, DN

28  50-68.)  The appeal has now been dismissed (DN 68) , and the confirmation order of the KCB
    plan is now final (DN 201, Case 2-08-bk-6834).

Thus, for all intents and purposes, the vast bulk of the legal work occurred in Case 2-08-bk-6834, which this court and counsel refer to as the TVAO case, and Debtors' counsel has now broken down its time to reflect that reality.

Thus, the court will focus most of its analysis only on that case.

## THE ANALYSIS

With that background, the court begins its review of 19 months of legal activity.

## June, 2008

From June 10-30, 2008, this Debtor filed a bare petition, a routine motion and order for joint administration, lists of creditors, Rule 2014 and Rule 2016 statements, an application to employ counsel (and order), and a short motion to extend time to file schedules. During this period, there were numerous client conferences, and work relating to preparation of the schedules and statement of affairs.

During June, 2008, counsel's efforts broke down as follows:

| | **Category** | **Hours** | **Amount** |
|---|---|---|---|
| 1 | Administration (client conferences; early case pleadings) | 9.8 | $3,223.00 |
| 2 | Asset Analysis (lease rejection issues; research) | 6.2 | 1,851.00 |
| 3 | Asset Disposition (rejection; possible lot buyer) | 1.5 | 1,112.00 |
| 4 | Business Operations (HOA issues) | 1.5 | 585.00 |
| 5 | Claims | 0.0 | 0.00 |
| 6 | Fee/Employment Applications (employment pleadings) | 1.5 | 609.00 |
| 7 | Financing | 0.0 | 0.00 |

11

| | | Category | Hours | Amount |
|---|---|---|---|---|
| | 8 | Litigation (review pending litigation) | 0.2 | 0.00 |
| | 9 | Meeting of Creditors (no charge) | 0.2 | 0.00 |
| | 10 | Plan and Disclosure Statement (strategies) | 3.5 | 1,225.00 |
| | 11 | Relief from Stay (work re: Estrella stay) | 1.2 | 468.00 |
| | | **TOTALS June, 2008** | **25.6** | **$9,073.00** |

## July, 2008

In July, 2008, the schedules and statement of affairs were filed, as was a list of the equity holders.  A short "notice of no objection" was filed, and a court appearance at a short status hearing on July 17 was made by Mr. Goldberg.  A three-page document containing a "consolidated" mailing list was also filed.

In this month, Debtor's counsel spent 62.6 hours, charging $20,949 therefor.  The work broke down in the following way:

| | | __Category__ | __Hours__ | __Amount__ |
|---|---|---|---|---|
| | 1 | Administration (schedules; lease rejections operating report compliance; U.S. Trustee meetings) | 10.1 | 3,213.00 |
| | 2 | Asset Analysis (re: plan financing; rejection of leases; client communications) | 2.0 | 405.00 |
| | 3 | Asset Disposition (lot purchase issues; complete lease rejections) | 1.3 | 429.00 |
| | 4 | Business Operations (budgets; operations analysis) | 4.8 | 1,794.00 |
| | 5 | Claims (claims analysis) | 1.3 | 475.00 |
| | 6 | Fee/Employment Applications (client discussion; work on draft of fee application) | 2.6 | 949.00 |

Case 2:08-bk-06834-JMM    Doc 227    Filed 01/06/10    Entered 01/07/10 08:14:07    Desc
Main Document    Page 12 of 31

| | | | Hours | Amount |
|---|---|---|---|---|
| 7 | Financing (work, conferences, strategy and meetings re: takeout financing) | | 5.5 | 2,145.00 |
| 8 | Litigation | | 0.0 | 0.00 |
| 9 | Meeting of Creditors (creditor finalization; prepare for 341 meeting) | | 1.5 | 470.00 |
| 10 | Plan and Disclosure Statement (exit financing; strategies; preliminary work on plan and disclosure statement) | | 33.1 | 10,913.00 |
| 11 | Relief from Stay  (Gramlich discussions) | | 0.4 | 156.00 |
| | **TOTALS July, 2008** | | **62.6** | **$20,949.00** |

The court must conclude, since no plan was ever filed prior to losing the property in December, and refinancing never materialized, that the time spent working on a plan was really not much of a benefit, the court will reduce that category by $7,000, leaving $13,949 as a reasonable sum.

### August, 2008

In August, work slowed slightly.

Nothing was filed by the Debtor in court this month, but a few creditors made their appearances.  The Debtor's counsel expended the following time:

| | **Category** | **Hours** | **Amount** |
|---|---|---|---|
| 1 | Administration (financial; operating reports; client communication) | 1.8 | $506.00 |
| 2 | Asset Analysis (KCB claim analysis; strategy; furniture issues) | 3.0 | 1,053.00 |
| 3 | Asset Disposition (financing; senior lienholder issues; sale; furniture items) | 9.0 | 3,422.00 |

13

| | | | Hours | Amount |
|---|---|---|---|---|
| 4 | Business Operations (budgets; insurance; operating issues; conferences) | 5.0 | | 1,272.00 |
| 5 | Claims | 0.0 | | 0.00 |
| 6 | Fee/Employment Applications (employment of real estate broker; communications) | 1.0 | | 390.00 |
| 7 | Financing | 0.0 | | 0.00 |
| 8 | Litigation | 0.0 | | 0.00 |
| 9 | Meeting of Creditors | 0.0 | | 0.00 |
| 10 | Plan and Disclosure Statement (plan; financing issues; conferences) | 9.4 | | 3,118.00 |
| 11 | Relief from Stay | 0.0 | | 0.00 |
| | **TOTALS August, 2008** | **29.2** | | **$9,761.00** |

### September, 2008

During this month, in court, the Debtor filed a routine turnover and sale motion to sell personal property from two of the residential unit models, along with a notice. This was the only court activity that month.

For September, 2008, the Debtor's counsel worked behind the scenes on the seedling plan, and billed:

| | **Category** | **Hours** | **Amount** |
|---|---|---|---|
| 1 | Administration (operating reports; cashflows) | 1.2 | $350.00 |
| 2 | Asset Analysis | 1.1 | 468.00 |
| 3 | Asset Disposition (furniture disposition; lienholder New South analysis) | 3.3 | 1,223.00 |
| 4 | Business Operations | 0.0 | 0.00 |
| 5 | Claims | 0.0 | 0.00 |
| 6 | Fee/Employment Applications | 0.0 | 0.00 |

| | Category | Hours | Amount |
|---|---|---|---|
| 7 | Financing (correspondence re financing plan) | 0.5 | 195.00 |
| 8 | Litigation | 0.0 | 0.00 |
| 9 | Meeting of Creditors | 0.0 | 0.00 |
| 10 | Plan and Disclosure Statement (meetings, strategy, preliminary steps for plan preparation) | 10.1 | 4,215.00 |
| 11 | Relief from Stay (discussions and evaluation of stay) | 0.6 | 234.00 |
| | **TOTALS September, 2008** | **16.8** | **$6,685.00** |

Again, the time spent on a futile (and never filed) plan, added to the prior months' non-productive efforts on the same front, was excessive. The court will reduce the requested fee by $2,500, allowing $4,185.

## October, 2008

In October, matters began to heat up. An objection was filed to the sale request, and the Debtor's principal secured creditor, New South Federal Savings Bank, sought stay relief. The Debtor asked to extend its deadline to file a plan.

In October, 2008, the attorneys' billing was:

| | Category | Hours | Amount |
|---|---|---|---|
| 1 | Administration (communications; meeting with client) | 2.7 | $600.00 |
| 2 | Asset Analysis | 0.0 | 0.00 |
| 3 | Asset Disposition (review objection and pleadings; prepare order; research) | 3.3 | 867.00 |
| 4 | Business Operations | 0.0 | 0.00 |
| 5 | Claims | 0.0 | 0.00 |
| 6 | Fee/Employment Applications | 0.0 | 0.00 |

| | | | |
|---|---|---|---|
| 7 | Financing | 0.0 | 0.00 |
| 8 | Litigation (phone call re KCB litigation) | 0.5 | 175.00 |
| 9 | Meeting of Creditors | 0.0 | 0.00 |
| 10 | Plan and Disclosure Statement (numerous conferences re plan and funding of same; motion to extend deadline; drafting of plan) | 13.4 | 4,837.00 |
| 11 | Relief from Stay (conferences re impact of stay relief) | 2.9 | 712.00 |
| | **TOTALS October, 2008** | **22.8** | **$7,191.00** |

The court's review of this month's pleadings and time entries reflects unnecessary duplication of effort for communications by and between the various firm members. In addition, it appears that much excess time was spent in discussions about the plan. Accordingly, the court will reduce October's fee by $2,500, and allow $4,691.

### November, 2008

This month saw a few stipulations to continue or extend proceedings, while the primary secured creditor moved toward gaining stay relief. The Debtor also asked for another extension to file its plan, because it was still seeking financing. The Debtor filed oppositions to stay relief, and three past due monthly operating reports.

A breakdown of the billings is:

| | **Category** | **Hours** | **Amount** |
|---|---|---|---|
| 1 | Administration (monthly operating reports) (no charge) | 1.0 | 0.00 |
| 2 | Asset Analysis (document review; Unit 16 sale items; Unit 21 deposit) | 1.5 | 545.00 |
| 3 | Asset Disposition (discussions; settlement) | 3.1 | 740.00 |

16

| | | | |
|---|---|---|---|
| 4 | Business Operations | 0.0 | 0.00 |
| 5 | Claims | 0.0 | 0.00 |
| 6 | Fee/Employment Applications (draft fee application) | 1.4 | 490.00 |
| 7 | Financing | 0.0 | 0.00 |
| 8 | Litigation | 0.0 | 0.00 |
| 9 | Meeting of Creditors | 0.0 | 0.00 |
| 10 | Plan and Disclosure Statement (work on both; plan concepts; meetings with KCB; motion to extend) | 24.2 | 8,489.50 |
| 11 | Relief from Stay (analyze, research, prepare, strategize over response to stay relief) | 22.4 | 6,197.00 |
| | **TOTALS November, 2008** | **53.6** | **$16,461.50** |

In all, this month appears overworked, and this is especially true relative to the inordinate amount of time spent on merely responding to stay relief, which was, the very next month, the subject of a stipulation to let the real property assets go. The court will cut the requested fee in half, to $8,230.75 for November, 2008.

### December, 2008

On December 8, 2008, a stipulation was reached relative to the stay relief motions pending against all three related Debtors. The agreement was that the stays were to be lifted. This effectively terminated the Debtor's ability to "reorganize" anything, and left only a shell with a litigation claim against KCB.

Billing for December, 2008, was:

| | **Category** | **Hours** | **Amount** |
|---|---|---|---|
| 1 | Administration | 0 | 0.00 |
| 2 | Asset Analysis | 0 | 0.00 |

| 3 | Asset Disposition (finalize stay relief settlement and begin focus on litigation) | 14.5 | 3,691.00 |
|---|---|---|---|
| 4 | Business Operations | 0.0 | 0.00 |
| 5 | Claims | 0.0 | 0.00 |
| 6 | Fee/Employment Applications (draft first fee application) | 5.8 | 804.50 |
| 7 | Financing | 0.0 | 0.00 |
| 8 | Litigation | 0.0 | 0.00 |
| 9 | Meeting of Creditors | 0.0 | 0.00 |
| 10 | Plan and Disclosure Statement (begin "litigation" plan and "waterfall agreement") | 3.8 | 1,222.00 |
| 11 | Relief from Stay | 12.3 | 4,172.00 |
| | **TOTALS December, 2008** | **36.4** | **$9,889.5** |

This month also contained, in the court's judgment, severe overworking of the agreement to lift the stay, totaling almost $8,000. This effort should have consumed no more than $1,500. Thus, the requested fee will be cut, for December, 2008, to $3,389.50.

### 2008 Conclusion

These Debtors' only chance for viable reorganization was to obtain either new investors or new lenders. From June through December, 2008, the Debtor spent $34,019.50 on plan preparation, but only $2,340 related to the financing category. As for plan preparation and strategies, $34,019.50 is a very high number, and was incurred for working on a plan for which there existed no exit financing, and which further, after a six-month effort, expired when the Debtors simply acquiesced to stay relief, leaving nothing more to reorganize. No plan was ever filed while the Debtors held tangible property.

For June through December, 2008, the Debtors were charged $80,010 for work on the cases. It should also be recalled that the attorneys received a pre-filing retainer of $91,000, and had used approximately $23,635 (fees and costs) of that amount up to the date of filing.

This court will not award compensation for non-beneficial expenditures of time for time-consumed, from which no tangible or legitimate benefit has, could or will materialize.

As a consequence, this court finds and concludes that the following is a fair and reasonable, effort for 2008, deserving of compensation:

| **Month** | **Amount Allowed** |
|-----------|--------------------|
| June, 2008 | $9,073.00 |
| July, 2008 | 13,949.00 |
| August, 2008 | 9,761.00 |
| September, 2008 | 4,185.00 |
| October, 2008 | 4,691.00 |
| November, 2008 | 8,230.75 |
| December, 2008 | 3,389.50 |
| Total | $53,279.25 |

**January, 2009**

As the case moved into 2009, things turned darker.

With the real property now released from the estate, the efforts to locate financing for an ongoing real estate development ended. Nothing of value was left to "reorganize." (*See, e.g.,* monthly operating reports for July and August; second motion to extend time to file a plan; DN 56, 57, 58, 74.)

It was at this point that the file reflected very little legal effort of value, and, to be frank, it would appear that the clients "hijacked" the case at this point. Instead of going along with

the clients' desire to simply litigate with KCB, the attorneys should have recommended conversion to Chapter 7, dismissal, or the appointment of an independent trustee.[6]

Instead, in the year 2009, the attorneys spent $58,024.50 through August, and another $15,370 from September through December, 2009, in non-productive efforts to either confirm a speculative or meaningless plan, or to get paid for attempting to do so.

Thus, with all hope for a true reorganization gone, the Debtor simply focused on litigation with KCB, and filed a motion to hire special counsel to do so (which was denied). *See* DN 90, 91. Thus, at that point, without a plan, voted upon by creditors, the Debtor sought to embark on a long, unpredictable and costly litigation course. The court denied those requests (DN 111). At this point, counsel should have understood that the outcome of the case was dire. Instead, it lurched forward, in the coming months, in blind pursuit of the litigation "plan."

During January, the firm incurred the following fees for which it seeks reimbursement:

| | **Category** | **Hours** | **Amount** |
|---|---|---|---|
| 1 | Administration (respond to correspondence) | 0.4 | 170.00 |
| 2 | Asset Analysis | 0.0 | 0.00 |
| 3 | Asset Disposition (work and discussions re: commencement of ligation against KCB) | 14.5 | 4,400.00 |
| 4 | Business Operations | 0.0 | 0.00 |
| 5 | Claims | 0.0 | 0.00 |
| 6 | Fee/Employment Applications (employment of special counsel) | 3.8 | 1,212.50 |
| 7 | Financing | 0.0 | 0.00 |
| 8 | Litigation | 0.0 | 0.00 |
| 9 | Meeting of Creditors | 0.0 | 0.00 |

---

[6] As evidence that the clients' principals were focused only on litigation with KCB, the court looks at their post-confirmation efforts to continue that litigation, which was denied, and the fact that their "new" plan was simply to pursue litigation with KCB. The odds of creditor recovery have never been shown to be anything more than speculative, throughout this case's lengthy history.

| | | | |
|---|---|---|---|
| 10 | Plan and Disclosure Statement (work on, and communicate with client) | 6.2 | 1,825.00 |
| 11 | Relief from Stay | 0.0 | 0.00 |
| | **TOTALS January, 2009** | **24.9** | **$7,607.50** |

It is the court's view that this "new" direction was entirely misplaced, and that at this point, the Debtor should have consented to dismissal, conversion or the appointment of a trustee.

This new desire to sue others was both unproductive and myopic. If a true cause of action existed, a trustee should have been appointed to look at it. In any event, the January, 2009 work was excessive, deserving of no more than $1,000 worth of effort.

## **February, 2009**

In February, the Debtor filed a motion and order to set a bar date on claims, responded to efforts to dismiss the case and continued with its desire to litigate, maintaining that its litigation quest was, in essence, more valid than the former efforts to reorganize. In the end, the court did not share that optimism, and refused to grant both the litigation request and the request to hire special counsel to do so.

During February, 2009, Debtor's counsel seeks:

| | **Category** | **Hours** | **Amount** |
|---|---|---|---|
| 1 | Administration (respond to motion to dismiss or convert) | 2.3 | $862.50 |
| 2 | Asset Analysis (pleadings related to KCB litigation scheme) | 5.9 | 2,182.50 |
| 3 | Asset Disposition (discussion and communication re KCB litigation scheme) | 0.7 | 297.50 |
| 4 | Business Operations | 0.0 | 0.00 |
| 5 | Claims (Stonegate) | 0.3 | 127.50 |

Case 2:08-bk-06834-JMM    Doc 227    Filed 01/06/10    Entered 01/07/10 08:14:07    Desc
Main Document    Page 21 of 31

| 6 | Fee/Employment Applications (first fee application work) | 2.0 | 750.00 |
|---|---|---|---|
| 7 | Financing | 0.0 | 0.00 |
| 8 | Litigation (review reply; confer re same) | 0.3 | 67.50 |
| 9 | Meeting of Creditors | 0.0 | 0.00 |
| 10 | Plan and Disclosure Statement (drafting; meetings; discussions) | 18.3 | 5,725.00 |
| 11 | Relief from Stay | 0.0 | 0.00 |
| | **TOTALS February, 2009** | **29.8** | **$10,012.50** |

In this month, the Debtors spent more time than was reasonably required to draft a plan and disclosure statement outlining pursuit of but a single lawsuit. The Debtors spent over $8,000 spinning its wheels over this idea. That effort was wasteful and of no benefit.

The court will only allow $2,000 for the month of February.

## <u>March, 2009</u>

In March, the Debtors finally filed their plan and disclosure statement (DN 109, 110). The plan was 23 pages long, but contained only a single meaningful sentence:

"The plan shall be funded entirely by the Kitchell net proceeds."

(DN 109 at p. 16, para. 8.) The rest of the plan was mostly boilerplate, except for those parts relating to the funding of the litigation and the so-called "trickle-down" or "waterfall" effect to creditors.

The disclosure statement was also 23 pages long, and contained much boilerplate, but little substance.

Also during March, there was a settlement with lien creditor Stonegate, filing of creditor claims and equity interests, and the filing of seven past-due monthly operating reports.

In March, 2009, the Debtor's attorney billings looked like this:

| | Category | Hours | Amount |
|---|---|---|---|
| 1 | Administration (work on monthly operating reports) | 6.4 | 1,837.50 |
| 2 | Asset Analysis (correspondence) | 0.3 | 127.50 |
| 3 | Asset Disposition (correspondence) | 0.2 | 85.00 |
| 4 | Business Operations | 0.0 | 0.00 |
| 5 | Claims | 3.5 | 1,077.50 |
| 6 | Fee/Employment Applications (first fee application) | 1.0 | 375.00 |
| 7 | Financing | 0.0 | 0.00 |
| 8 | Litigation (Stonegate settlement; court hearing) | 3.6 | 1,350.00 |
| 9 | Meeting of Creditors | 0.0 | 0.00 |
| 10 | Plan and Disclosure Statement (finalize plan and disclosure statement; review objections; focus on voting issues) | 10.7 | 4,047.50 |
| 11 | Relief from Stay | 0.0 | 0.00 |
| | **TOTALS March, 2009** | **25.7** | **$8,900.00** |

This month's effort was worth only $1,500.

## April, 2009

In court during April, the KCB and Debtor parties wrestled over voting issues, as well as the contents of the Debtors' disclosure statement. KCB then filed a competing plan (DN 146). In addition, a hearing was held on the Debtors' disclosure statement, approving it, and moving Debtors' joint plan down the confirmation road.

1      Also, an order was entered which granted, on an <u>interim</u> basis, the Debtors' first

2  attorney fee application in the amount of $88,910.46.  The court allowed the attorneys to apply the

3  remaining pre-petition retainer of $67,365 against that figure.[7]

4      In April, the fee breakdown was:

| | **Category** | **Hours** | **Amount** |
|---|---|---|---|
| 1 | Administration | 0.0 | 0.00 |
| 2 | Asset Analysis | 0.0 | 0.00 |
| 3 | Asset Disposition | 0.0 | 0.00 |
| 4 | Business Operations | 0.0 | 0.00 |
| 5 | Claims (correspondence) | 0.2 | 85.00 |
| 6 | Fee/Employment Applications (call re KCB position) | 0.2 | 85.00 |
| 7 | Financing | 0.0 | 0.00 |
| 8 | Litigation | 0.0 | 0.00 |
| 9 | Meeting of Creditors | 0.0 | 0.00 |
| 10 | Plan and Disclosure Statement (disclosure statement litigation; hearing; ballot issues; analyze court rulings) | 10.9 | 3,917.50 |
| 11 | Relief from Stay | 0.0 | 0.00 |
| | **TOTALS April, 2009** | **11.3** | **$4,087.50** |

This month deserved no more than $1,500 in fees.

## **May, 2009**

In May, KCB and Debtors jockeyed for position as to which plan could be heard first.

KCB began buying up claims, and objections--back and forth--to the two plans heated up.  The

Debtors' plan was continued, on the Debtors' motion, in hopes of a settlement.

During May, 2009, Debtors' counsel spent their time in the following ways:

[7]      See footnote 3.

| | Category | Hours | Amount |
|---|---|---|---|
| 1 | Administration | 0.0 | 0.00 |
| 2 | Asset Analysis (research re: KCB state court litigation) | 0.3 | 67.50 |
| 3 | Asset Disposition | 0.0 | 0.00 |
| 4 | Business Operations | 0.0 | 0.00 |
| 5 | Claims (telephone call; research) | 0.4 | 90.00 |
| 6 | Fee/Employment Applications | 0.0 | 0.00 |
| 7 | Financing | 0.0 | 0.00 |
| 8 | Litigation | 0.0 | 0.00 |
| 9 | Meeting of Creditors | 0.0 | 0.00 |
| 10 | Plan and Disclosure Statement (voting issues; KCB objection strategy; settlement sessions; plan hearing) | 25.1 | 8,037.00 |
| 11 | Relief from Stay | 0.0 | 0.00 |
| | **TOTALS May, 2009** | **25.8** | **$8,194.50** |

Again, only $1,000 should be allowed for this month.

**June, 2009**

In June, most of the court-related activity dealt with the building momentum of the KCB competing plan. By this time, the Debtors felt their plan had no chance for confirmation, and developed a strategy to try to get their cases dismissed rather than run the risk of the KCB plan being confirmed. This expenditure of time was clearly not beneficial to creditors, whose chances for some actual recovery appeared to be worth something in the KCB plan.

During June, 2009, Debtor's attorneys spent the following time:

| | Category | Hours | Amount |
|---|---|---|---|
| 1 | Administration (strategy and implementation of new tactic-- dismissal or conversion) | 13.7 | 967.50 |
| 2 | Asset Analysis | 0.0 | 0.00 |
| 3 | Asset Disposition | 0.0 | 0.00 |
| 4 | Business Operations | 0.0 | 0.00 |
| 5 | Claims (MKA status) | 0.2 | 45.00 |
| 6 | Fee/Employment Applications | 0.0 | 0.00 |
| 7 | Financing | 0.0 | 0.00 |
| 8 | Litigation (conference re litigation strategy and motion to convert/dismiss) | 5.2 | 1,200.00 |
| 9 | Meeting of Creditors | 0.0 | 0.00 |
| 10 | Plan and Disclosure Statement (analysis of KCB vs. Debtors' plan; strategy sessions) | 16.0 | $4,587.50 |
| 11 | Relief from Stay | 0.0 | 0.00 |
| | **TOTALS June, 2009** | **35.1** | **$6,800.00** |

Only $1,500 will be allowed.  This case was simply overworked in this month, as in prior ones.

### July, 2009

In July, the Debtors made an effort to amend their plan, followed a few days later by a motion to dismiss or convert, which continued its animus toward KCB, accusing it of some sort of generalized wrongdoing by its having proposed a competing plan and purchased claims, although both activities are specifically authorized by the Bankruptcy Code or the Bankruptcy Rules. *See* 11 U.S.C. § 1121(C); FED. R. BANKR. P. 3001(e).

A confirmation hearing on the KCB plan was held on July 28, and it was confirmed on July 31, 2009 (DN 198).  Little or no effort was made by the Debtors to contest the KCB plan.

In July, Debtor's counsel did the following:

| | Category | Hours | Amount |
|---|---|---|---|
| 1 | Administration (conferences re: operating reports and dismissal motion) | 0.6 | 112.50 |
| 2 | Asset Analysis | 0.0 | 0.00 |
| 3 | Asset Disposition | 0.0 | 0.00 |
| 4 | Business Operations | 0.0 | 0.00 |
| 5 | Claims | 0.0 | 0.00 |
| 6 | Fee/Employment Applications | 0.0 | 0.00 |
| 7 | Financing | 0.0 | 0.00 |
| 8 | Litigation (strategy to promote Debtor's plan) | 1.4 | 525.00 |
| 9 | Meeting of Creditors | 0.0 | 0.00 |
| 10 | Plan and Disclosure Statement (analysis; strategy to impede KCB plan, promote Debtor's plan; conferences; attend confirmation hearing on KCB plan) | 30.6 | 9,760.00 |
| 11 | Relief from Stay | 0.0 | 0.00 |
| | **TOTALS July, 2009** | **32.6** | **$10,397.50** |

The court will allow $2,500 for the month.

## August, 2009

In August, after the KCB plan was confirmed, the Debtors abandoned their effort to dismiss or convert the TVAO case. They did press, however, to dismiss the other two related, but moribund cases.

And, Debtors' counsel filed their final fee application, seeking final approval of:

- First fee application (includes costs of $1,098.96) (DN 120)     $88,910.46
- Final fee application (includes costs of $2,033.32) (DN 205)     54,268.32
                                                                   $143,178.78

The Debtors' firm acknowledged the prior application of its trust fund monies of $67,365 and sought a final payment of $74,970.48.

August, 2009, breaks down in the following manner:

|   | Category | Hours | Amount |
|---|---|---|---|
| 1 | Administration (review order dismissing other cases) | 0.3 | 67.50 |
| 2 | Asset Analysis | 0.0 | 0.00 |
| 3 | Asset Disposition | 0.0 | 0.00 |
| 4 | Business Operations | 0.0 | 0.00 |
| 5 | Claims | 0.0 | 0.00 |
| 6 | Fee/Employment Applications | 4.1 | 1,117.50 |
| 7 | Financing | 0.0 | 0.00 |
| 8 | Litigation | 0.0 | 0.00 |
| 9 | Meeting of Creditors | 0.0 | 0.00 |
| 10 | Plan and Disclosure Statement | 0.0 | 0.00 |
| 11 | Relief from Stay (motion to dismiss; hearings; review other pleadings) | 2.4 | 840.00 |
|   | **TOTALS August, 2009** | **6.8** | **$2,025.00** |

The court will allow $2,000 for this month.

### September - December, 2009

        KCB objected to Debtors' fee request, and the balance of the quarter was devoted to arguments about fees. A hearing was held on October 14, 2009, after which supplemental briefing

occurred. For these efforts, Debtors' counsel have now asked for an additional $15,370 in defending their fee applications, plus $835 in "supplemental costs." As the breakdown required by the court was something that should have been done initially, no award of fees for this excessive effort should be made.

Now, therefore, Debtors' counsel seeks, in fees and costs for this single case:

- $143,178.78
- 15,370.00
- 835.00

**Total**    **$159,383.78**

For this effort, virtually all of which related to justifying excess fees charged, the court will allow only $1,086.

## A FINAL WORD

From an overall analysis, Debtors' counsel severely overworked the cases, which appeared doomed almost from the beginning. The cases very quickly morphed from a legitimate effort to reorganize a routine troubled land development into a single-issue squabble with its primary contractor. After stay relief was granted in December, 2008, the Debtor should have given up, licked its wounds, and walked away. The principals could have then litigated with KCB on their own nickel.

Through December, 2008, Debtor incurred fees of $80,010. During that time, $34,019.50 was devoted to plan issues.

From January through December, 2009, Debtors incurred fees of $73,394.50. During those months, $37,899.50 was devoted to plan issues.

Overall, the court must find and conclude that the $91,000 received prior to the beginning of the case, and used up in the entire bankruptcy representation, is fair and reasonable, and that counsel is not entitled to more.

Thus, having used up its entire $91,000 retainer (both pre- and post-petition), this court will not allow any additional fees or costs. Nor will disgorgement of any amount be required. The $91,000 received is enough to fairly compensate counsel and pay any related costs for these troubled cases.

In the future, counsel should guard against spending excessive amounts of time, and should ration the heavy pencil for non-productive effort. It should also caution its clients against unproductive activities, and exercise more professional judgment before embarking on debtors' quixotic quests. The KCB contribution of $110,000 in the current plan shall be used to pay creditors.

The firm may retain the funds paid to it after the first fee application, as well as the funds paid and used, pre-petition, for bankruptcy preparation. These figures total $91,000. The balance of the request will be denied.

## RULING

A separate order will be entered (FED. R. BANKR. P. 9021) which:

1.    Allows reasonable costs and attorneys' fees for all work performed by Debtor's counsel in the total sum of $91,000; and

2.    Sustains the KCB objection to amounts in excess of that sum.

Any entity aggrieved by the order has fourteen days to appeal therefrom. FED. R. BANKR. P. 8002.

DATED AND SIGNED ABOVE.

Case 2:08-bk-06834-JMM    Doc 227    Filed 01/06/10    Entered 01/07/10 08:14:07    Desc
Main Document    Page 30 of 31

1    COPIES to be sent by the Bankruptcy Notification
     Center ("BNC") to the following:
2
     Scott R. Goldberg, Attorneys for Debtors
3
     Bradley David Pack, Attorneys for Kitchell Custom Builders
4
     Office of the U.S. Trustee
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28